UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARIA A. SAUNDERS,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     Civil Case No. 18-2492 (RJL)
                                      )
ANDREW SAUL,                          )
Commissioner of Social Security,      )
                                      )
          Defendant.                  )

**FILED**

AUG − 5 2020

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**

August **5**, 2020 [Dkt. ##13, 16]

Plaintiff Maria A. Saunders ("plaintiff") brings this action against defendant

Andrew Saul, the Commissioner of Social Security ("defendant" or "Commissioner"),

seeking reversal under 42 U.S.C. § 405(g) of the Commissioner's final decision denying

her applications for Disability Insurance Benefits and Supplemental Security Income.

Plaintiff alleges that the Commissioner's decision was not supported by substantial

evidence.  Before the Court is plaintiff's Motion for Judgment of Reversal [Dkt. #13] and

defendant's Motion for Judgment of Affirmance [Dkt. #16].  For the following reasons, the

Court DENIES plaintiff's motion and GRANTS defendant's motion.

**BACKGROUND**

In January 2014, when the events giving rise to this case occurred, plaintiff Maria

A. Saunders was a 52-year-old single woman living with her children in Washington, D.C.

Administrative Record ("A.R.") at 296, 683.  She had completed two years of college in

1980.  A.R. at 339.  Since 2005, she had worked as a bus attendant for the D.C. Public Schools system, where she helped children with special needs to board and exit the school bus each day.  A.R. at 44, 308–09, 339.  She was diagnosed as obese, as she was 5 feet, 7 inches tall and weighed around 260 pounds.  A.R. at 527, 531.  She had a history of back pain, *see, e.g.*, A.R. at 483, 492, 533, 559, 754, 760, as well as surgery on her left knee in 2008, A.R. at 465–67, 472, and a hernia repair in 2009, A.R. at 530.

On January 7, 2014, plaintiff was looking for the school bus at the bus terminal when she slipped and fell on some ice, injuring her left hip and lower back.  A.R. at 658, 683.  Experiencing significant pain, plaintiff went to Providence Hospital that day and was treated for contusion, or deep bruising.  A.R. at 667, 684, 765.  An x-ray of her left hip showed "mild ossification of the ligamentous insertions within the pelvis and trochanters."  A.R. at 676.  The doctors prescribed cyclobenzaprine and ibuprofen and instructed her to apply heat to the affected area.  A.R. at 662.

On January 10, 2014, plaintiff visited her primary care physician Dr. Edwin Williams for complaints of continued back and hip pain.  A.R. at 765.  Dr. Williams noted "[l]imited [range of motion] with lying on exam table and . . . limited [range of motion] with flexion of [left] knee."  A.R. at 766.  On January 24, 2014, plaintiff visited Dr. Melvin Gerald for "left upper back and left hip pain w[ith] walking."  A.R. at 768.  On January 29, 2014, plaintiff saw Dr. Williams again for "pain in her back and hip," and she requested to go to physical therapy.  A.R. at 770.  Dr. Williams assessed that plaintiff had recovered "full [range of motion] of [her] legs" but still had pain in her left hip with flexion.  A.R. at 771.  On January 31, 2014, plaintiff met with neurosurgeon Dr. Bryan Mason, who

recommended physical therapy, nonsteroidal anti-inflammatory drugs, and muscle relaxers. A.R. at 732.

Plaintiff tried different treatment options throughout 2014, to varying degrees of clinical success. For her pain, plaintiff's doctors recommended that she use a heating pad and continued to prescribe cyclobenzaprine and ibuprofen. A.R. at 768, 770. However, plaintiff continued to report that her pain was very high or at a "9/10" or "10/10" on the pain scale. A.R. at 779, 859, 909. While plaintiff attempted to complete physical therapy, A.R. at 909–10, she reported that it did not help and was very painful, A.R. at 777, 953. She continued visiting Dr. Williams and Dr. Gerald for back and hip pain approximately once per month for much of 2014. A.R. at 768, 770, 772, 774, 776, 779, 781, 784. During this period, multiple medical professionals signed "work release" letters advising that she could not yet return to work. A.R. at 819–27. For most of this time, though, plaintiff's doctors reported that she had full range of motion in her back, hips, and legs, with some pain during certain movements. *See, e.g.*, A.R. at 771.

On June 12, 2014 and July 9, 2014, plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), respectively, claiming that she was disabled due to her fall on January 7, 2014. A.R. at 231–48. Meanwhile, Plaintiff's application with the D.C. Office of Risk Management for worker's compensation was granted on June 23, 2014. Pl.'s Mot. for J. of Reversal, Notice of Determination Regarding Awarding Worker Compensation Benefits (June 23, 2014) [Dkt. #13-2].

During this time, plaintiff continued to be evaluated by her primary care doctor as well as by various specialists and independent medical examiners in connection with her disability claims. At a visit on June 25, 2014, Dr. Williams advised that plaintiff should get up from a seated position every 2 hours, should only occasionally lift up to 5 pounds, and would likely be absent from work more than 3 times per month due to her impairments. A.R. at 708–11. On June 27, 2014, however, she visited orthopedic specialist Dr. Peter Lavine, who assessed that her gait was normal and that her complaints of pain were "excessively dramatic." A.R. at 924–25. On November 17, 2014, plaintiff saw rheumatology specialist Dr. Eugene Miknowski, who found that plaintiff had a "normal" gait, intact sensation, and full muscle and grip strength, but also had "decreased [range of motion] of lumbar spine and both hips." A.R. at 812–13. On November 26, 2014, Dr. Walter Goo performed a consultative examination for plaintiff's disability claim and noted that plaintiff suffered from severe pain, obesity, hypertension, and diabetes. A.R. at 80. He assessed her to have symmetrical reflexes, normal gait, decreased range of motion in the lumbar spine and both hips, and mild to moderate degenerative changes in her spine and hips. A.R. at 80–83. On December 31, 2014, plaintiff saw neurologist Dr. Joseph Liberman, who determined that plaintiff had "marked limitation of lumbar movement" and a "slow and antalgic gait"; he suggested that plaintiff might have "posttraumatic myofascial pain syndrome" as a result of her January 2014 fall. A.R. at 941.

On January 22, 2015, Dr. Jason Brokaw saw plaintiff for an independent medical examination and found that plaintiff exhibited "very strange behavior" including "obvious symptom magnification": he reported that she "self limit[ed] lumbar range of motion" and

that he observed her range of motion to be "greater during other time periods" when he was not explicitly examining her. A.R. at 859–60. On February 2, April 13, and July 6, 2015, Dr. Williams found no range of motion constraints. A.R. at 1073–76, 1077–78, 1079–80. However, on October 21, 2015, Dr. Liberman evaluated plaintiff and determined that she had not improved or responded to any treatment: he noted normal muscle strength and intact sensation and reflexes, but limited range of motion in her lumbar spine. A.R. at 1151–52. He reaffirmed these findings at evaluations in February 2017 and June 2017. A.R. at 1143–44, 1146–47. On August 10, 2017, Dr. Stanley Rothschild saw plaintiff for an independent medical examination and reviewed the reports of plaintiff's prior medical examinations and treatments. A.R. at 1037–41. He explained that during his examination, plaintiff was not cooperative, exhibited strange behavior that he felt was "not related to the injury," and walked normally most of the time, leading him to the conclusion that she exhibited symptom magnification. A.R. at 1039–41.

Plaintiff's DIB and SSI claims were denied first on December 3, 2014, A.R. at 142–52, and again on reconsideration on August 25, 2015, A.R. at 155–66. Plaintiff then requested review by an Administrative Law Judge ("ALJ"), who held a hearing on November 30, 2017 at which both plaintiff and vocational expert Quintin Boston testified. A.R. at 31–67, 189. Three days later, the ALJ denied plaintiff's claims on the basis that plaintiff's impairments did not prevent her from performing light work: the ALJ reasoned that plaintiff's impairments could not reasonably be expected to cause the intensity, persistence, and limiting effects of the symptoms of which plaintiff complained. A.R. at 15–23. On September 18, 2018, the Appeals Council denied review. A.R. at 1–6.

## STANDARD OF REVIEW

To qualify for Disability Insurance Benefits and Supplemental Security Income respectively under Titles II and XVI of the Social Security Act, a claimant must establish that she is "disabled." 42 U.S.C. §§ 423, 1382. A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

The ALJ conducts a five-step sequential evaluation process to determine if a claimant suffers from a "disability." The burden of proof is on the claimant to satisfy the first four steps. *Stankiewicz v. Sullivan*, 901 F.2d 131, 133 (D.C. Cir. 1990). At step one, the claimant must show that she is not presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the claimant is not gainfully employed, the claimant must show at step two that she has a "severe impairment" that "significantly limits [her] . . . ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the ALJ determines the claimant has a severe impairment, the ALJ must determine at step three whether the claimant's impairment "meets or equals" an impairment listed in the regulations. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant "is deemed disabled and the inquiry is at an end." *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004); 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the Commissioner must assess the claimant's "residual functional capacity," 20 C.F.R. §§ 404.1520(e), 416.920(e) — *i.e.*, the most work the claimant can still perform despite her limitations, *id.* § 404.1545(a). At step

four, the claimant must demonstrate that she is incapable of performing her prior work based on her residual functional capacity. *Id.* §§ 404.1520(f), 416.920(f).

If the claimant makes each of these four necessary showings, the burden shifts to the Commissioner for the fifth step: to show that the claimant can do "other work," considering her age, education, work experience, and residual functional capacity. *Id.* §§ 404.1520(g), 416.920(g). If the claimant is not able to do other work, she is considered disabled and is entitled to benefits.

Here, in performing this five-step evaluation process, the ALJ found that plaintiff has not engaged in substantial gainful activity since January 7, 2014, satisfying step one. A.R. at 17. At step two, the ALJ then evaluated plaintiff's medical conditions and found that she has severe impairments of degenerative disc disease and obesity. A.R. at 18. She determined that plaintiff's impairments do not meet or medically equal the severity of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, meaning she does not qualify for automatic disability under step three. A.R. at 18. Moving to step four, the ALJ assessed plaintiff's residual functional capacity and determined that she can perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). A.R. at 18. Specifically, the ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the medical evidence. A.R. at 19–22. Therefore, the ALJ found that plaintiff could perform her past relevant work as a bus attendant as generally performed. A.R. at 22.

The District Court must affirm an ALJ's decision that is supported by "substantial evidence" in the record.  42 U.S.C. § 405(g); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The substantial evidence standard demands "more than a 'scintilla,' but less than a preponderance of the evidence." *Affum v. United States*, 566 F.3d 1150, 1163 (D.C. Cir. 2009) (quoting *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 461 (D.C. Cir. 2004)).  As such, this Court must engage in "careful scrutiny of the entire record," *Brown*, 794 F.2d at 705, and must ensure that the Commissioner, acting through the ALJ, "has analyzed all evidence and has sufficiently explained the weight [s]he has given to obviously probative exhibits." *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989).  However, the Court must not substitute its own judgment for that of the Commissioner. *See Butler*, 353 F.3d at 999.  Our Circuit Court has explained that substantial evidence review is "highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).

## ANALYSIS

Plaintiff challenges the Commissioner's decision, made through the ALJ, as not supported by substantial evidence.  Specifically, she alleges that the ALJ (1) overlooked evidence that plaintiff met the criteria for automatic disability under Listings 1.02 and 1.04; (2) used an inaccurate selection of clinical findings; (3) failed to give substantial weight to D.C.'s favorable workers' compensation determination; (4) improperly discounted the opinions of plaintiff's treating physicians; (5) failed to weigh every medical opinion in the

record; (6) failed to explain how plaintiff could perform light work; and (7) erred in determining that plaintiff could perform her past work as generally performed as a bus attendant.[1] Pl.'s Mot. for J. of Reversal at 2–5 [Dkt. #13]. For the reasons set forth below, I find the ALJ's decision was indeed supported by substantial evidence.

*First*, the ALJ reasonably found that plaintiff did not meet the criteria for automatic disability under Listings 1.02 and 1.04. *See* A.R. at 18. The listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1") "define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The Appendix 1 listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Id.* at 529–30. To show that her impairment matches a listing, a claimant "must meet *all* of the specified medical criteria." *Id.* at 530. The Supreme Court has acknowledged that "the medical criteria defining the listed impairments" are set "at a higher level of severity than the statutory standard" because they "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532.

The ALJ correctly found that plaintiff's hip impairment does not meet or medically equal Listing 1.02 because plaintiff had a normal gait and could walk without an assistive device. A.R. at 18. Listing 1.02: *Major dysfunction of a joint(s)* requires (1) "gross anatomical deformity," (2) "chronic joint pain and stiffness with signs of limitation of

---

[1] The Court will address these asserted errors in the order the issues were evaluated by the ALJ, rather than the order plaintiff asserts them in her Motion for Judgment of Reversal.

motion or another abnormal motion of the affected joint(s)," (3) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," and (4) "[i]nvolvement of one major peripheral weight-bearing joint . . . , resulting in inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. Plaintiff asserts that the ALJ erroneously disqualified her from Listing 1.02 for not using a walker and omitted clinical findings demonstrating that she had ossification, narrowing of hip joints, or range of motion deficits. Pl.'s Mem. in Support of Mot. for Reversal of J. ("Pl.'s Mem.") at 19–20. However, plaintiff pointed to no evidence that she was unable to ambulate effectively, one of the requirements to meeting Listing 1.02. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. As the ALJ correctly found, the bulk of medical evidence showed that plaintiff had a normal gait and did not need to use an assistive device for ambulation. A.R. at 83, 130, 687, 730, 971, 1045, 1137, 1143, 1152. Only one physician, Dr. Miknowski, even mentioned that plaintiff *could* benefit from using a walker. *See* A.R. at 813. There was also insufficient evidence for the ALJ to find that plaintiff suffered from a "gross anatomical deformity" or "joint space narrowing, bony destruction, or ankylosis." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. At most, plaintiff's x-rays showed mild degenerative changes such as "mild ossification." A.R. at 676. The ALJ therefore correctly determined that plaintiff's hip impairment did not meet Listing 1.02's requirements.

The ALJ also found that plaintiff's back impairment does not meet or medically equal Listing 1.04A because plaintiff showed no evidence of a loss of strength or reflexes in the lower extremities. A.R. at 18. Listing 1.04: *Disorders of the spine* requires (1) a

spinal disorder "resulting in compromise of a nerve root . . . or the spinal cord," (2) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain," (3) "limitation of motion of the spine," (4) "motor loss . . . accompanied by sensory or reflex loss," and (5) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. Plaintiff has produced no evidence of sensory or reflex loss. To the contrary, plaintiff's physicians consistently noted her intact sensation and full grip and muscle strength. *E.g.* A.R. at 812–13. The ALJ thus correctly determined that plaintiff's back impairment did not meet Listing 1.04's requirements.

Nor has plaintiff shown that she has a combination of impairments that meets or medically equals the severity of any listed impairment. The burden of demonstrating medical equivalence is on the claimant. To be "medically equivalent to a listed impairment," the impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Plaintiff contends that the combination of her impairments—long-term arthritis, spinal nerve root compression, obesity, myofascial pain syndrome, and insomnia—could be expected to cause the range of motion limitations contemplated by Listing 1.04. Pl.'s Mem. at 22–23. Plaintiff has not shown that any of her impairments are equal in severity or duration.

**Second**, the ALJ reasonably considered the physicians' objective clinical findings. Plaintiff contends that the ALJ incorrectly found that she exhibits a full range of motion, normal gait and coordination, intact reflexes, and full strength in her upper and lower extremities, *see* A.R. at 20–21. Pl.'s Mem. at 24. According to plaintiff, her examinations

consistently demonstrated clinical deficits in the 12 months following her January 7, 2014 fall. *Id.* Plaintiff is mistaken.

The ALJ reasonably weighed the objective evidence and concluded that plaintiff had a normal gait, good range of motion, and full strength and reflexes. *See* A.R. at 19–20. Both the ALJ and defendant acknowledge that plaintiff experienced tenderness, limited range of motion in her hip, and pain with forward flexion of her lumbar spine in the months immediately following her fall. *See* A.R. at 19; Def.'s Mem. in Support of Mot. for J. of Affirmance ("Def.'s Mem.") at 24 [Dkt. #16]. However, the ALJ reasonably weighed the various medical opinions and determined that plaintiff regained her functional range of motion and normal gait within several months. In reaching this conclusion, the ALJ analyzed examination notes by Dr. Williams as well as other physicians from 2014 to 2017. *See* A.R. at 19–20 ("physical examinations from October 2015, December 2015, March 2016, October 2016, February 2017, April 2017, and June 2017 indicate the claimant occasionally has lumbar tenderness, but otherwise exhibits a full range of motion without pain, normal gait and coordination, and full strength in her upper and lower extremities"); A.R. at 21 ("The evidence [from Dr. Williams] shows that despite the claimant's obesity, degenerative disc disease, and related back pain, she retains a normal gait without an assistive device, and has intact strength and range of motion in her extremities.").

After a thorough review of the record, the Court finds that substantial evidence supports this conclusion: By January 29, 2014, Dr. Williams assessed that plaintiff had full range of motion in her shoulders, neck, and legs with some pain upon either extension or flexion. A.R. at 771. In June 2014, Dr. Lavine concluded that plaintiff had a normal gait

with no limp and walked effectively without using an assistive device. A.R. at 925. In November 2014, Dr. Miknowski found that plaintiff had a normal gait, intact sensation, and full muscle and grip strength without atrophy, hypertrophy, or muscle twitches, though he did find decreased range of motion. A.R. at 812–13. In January 2015, Dr. Brokaw reported that plaintiff had full range of motion in her left hip and left leg while seated; he suspected she was "self limit[ing] lumbar range of motion," which "was observed to be greater during other time periods than when [he] was overtly examin[ing] her." A.R. at 860. In February 2015 and again in July 2015, Dr. Williams reported that plaintiff had full range of motion. A.R. at 1074, 1080. Dr. Baig agreed that plaintiff had normal gait, full muscle strength, and intact sensation in September 2015, A.R. at 954, as did Dr. Williams and Dr. Liberman from 2015 to 2017, A.R. at 986, 1045, 1049, 1053, 1058, 1062, 1143, 1152. While there certainly is some contrary evidence in the record, the bulk of the objective medical findings demonstrates that her gait was normal, her range of motion had recovered, and her muscle strength, reflexes, and sensations were still intact.

Plaintiff also alleges that the ALJ "volunteered her lay opinion" about what courses of treatment would be appropriate if plaintiff had debilitating pain. Pl.'s Mem. at 25–26. However, the ALJ did not improperly insert her non-expert medical opinion, but instead merely evaluated and drew conclusions from the medical evidence in the record. The ALJ stated that plaintiff has pursued "conservative treatment via prescribed medications and physical therapy" and has not pursued "more aggressive treatment" such as "use of a TENS unit, an assistive device, or surgical intervention." A.R. at 20. The ALJ neither suggested that plaintiff should pursue certain more aggressive treatments like surgery nor engaged in

independent medical analysis of the record. Instead, the ALJ simply discussed the treatment recommendations of plaintiff's physicians and the actual treatment that plaintiff pursued, drawing reasonable inferences about the severity of plaintiff's symptoms and limitations from that evidence. *See* A.R. at 20. The ALJ acted well within her discretion in assessing the credibility of plaintiff's claims of pain.

*Third*, the ALJ properly weighed plaintiff's receipt of workers' compensation benefits. Plaintiff alleges that the ALJ failed to consider plaintiff's favorable workers' compensation determination, as evidenced by the fact that the determination is absent from the record. Pl.'s Mem. at 27–28. According to plaintiff, the ALJ had a responsibility to fully develop the record and abdicated this responsibility by not obtaining the full workers' compensation determination. *Id.* at 28. Not so.

To begin, the ALJ did not legally err by not obtaining the workers' compensation determination and including it in the administrative record. The Social Security Act assigns the burden of production to the claimant, not the Social Security Administration, *see* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a), given that claimants are often in a far superior position to produce their own medical records than the Social Security Administration is. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Although the ALJ certainly could have included the workers' compensation determination in the record, she had no responsibility to do so. The ALJ's responsibility is merely to "develop [the claimant's] complete medical history" and to "make every reasonable effort to help [the claimant] get medical evidence from [her] own medical sources." 20 C.F.R. § 404.1512(b)(1).

Additionally, the workers' compensation determination was not binding on the ALJ, contrary to plaintiff's assertion.  Regulations governing the Social Security Administration provide that any other governmental agencies' determinations are not binding:

> Other governmental agencies and nongovernmental entities . . . make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules.  Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, *it is not binding on us and is not our decision about whether you are disabled or blind under our rules*.

20 C.F.R. § 404.1504 (emphasis added).  Like the various physicians' judgments as to whether plaintiff suffered from a disability, a favorable workers' compensation determination has no talismanic effect.  *See* SSR 06-03p, 71 Fed. Reg. 45,593-03, 45,596 (Aug. 9, 2006).  As defendant explains, Def.'s Mem. at 26, the standard for awarding workers' compensation in the District of Columbia differs from the standard for awarding disability benefits in at least one key respect: worker's compensation is awarded for temporary or partial disability, whereas DIB and SSI benefits are awarded only for disability lasting longer than 12 months.  *See* SSR 06-03p, 71 Fed. Reg. at 45,596–97.  *Compare* D.C. Code Ann. §§ 1-623.02, .05–.06 (2010) (workers' compensation), *with* 42 U.S.C. § 423(d)(1)(A) (social security).

The ALJ must only "explain the consideration given to these decisions [in the case record] in the notice of decision."  SSR 06-03p, 71 Fed. Reg. at 45,597.  But because plaintiff did not provide the workers' compensation determination, the ALJ was not required to explain any consideration of it in the notice of decision.  Nevertheless, the

record makes clear that the ALJ did consider the underlying medical evidence supporting plaintiff's workers' compensation determination. *See* A.R. at 19–22; *see also, e.g.*, A.R. at 765–85, 800, 859–62, 870–71, 923–26, 940–42. As plaintiff points out, Pl.'s Mem. at 27, the ALJ clearly knew about plaintiff's workers' compensation award, as she asked plaintiff about the award at the hearing, A.R. at 47. Given the ALJ's consideration of all the underlying medical evidence and the nonbinding nature of other governmental agencies' decisions regarding disability, the Court fails to find any harmful error in the absence of the D.C. workers' compensation decision from the record.

*Fourth*, the ALJ reasonably assessed low weight to the opinions of Dr. Miknowski and Dr. Liberman. Plaintiff alleges that the ALJ should have given more weight to the opinion of Dr. Miknowski, who, according to plaintiff, was the only doctor whose opinion addressed plaintiff's impairments in combination. Pl.'s Mem. at 28–29. Plaintiff is wrong, both factually and legally. First, other physicians such as Dr. Goo and Dr. Rothschild considered plaintiff's full treatment history, including the combined effects of plaintiff's back and hip pain and her obesity. *See* A.R. at 71–74, 1037–41. Also, the ALJ reasonably discounted Dr. Miknowski's opinion as to plaintiff's limitations in carrying objects, standing, and walking as contrary to the objective medical evidence. A.R. at 21. As the ALJ explained, "[T]he claimant has a normal gait without assistive devices, intact sensation, and normal strength and range of motion in her upper and lower extremities." A.R. at 21. The ALJ is the sole adjudicator of how much weight to afford medical opinions, and her decision must be upheld if supported by substantial evidence. *Butler*, 353 F.3d at

999; *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 36 (D.D.C. 2014); *Chevalier v. Shalala*, 874 F. Supp. 2, 3 (D.D.C. 1994).

Plaintiff also alleges that the ALJ should have assigned more weight to the opinion of Dr. Liberman because he treated plaintiff on multiple occasions over four years. Pl.'s Mem. at 30–33. While plaintiff is correct that the ALJ has a heavier burden to discount the opinion of a treating physician like Dr. Liberman, *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996), the ALJ here reasonably explained why she did so. An ALJ need not treat a treating physician's opinions as controlling if they are contradicted by substantial evidence and the ALJ explains why she is not following them. *See Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011); *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993). The ALJ here explained that she discounted Dr. Liberman's opinion that plaintiff was permanently disabled because it did not match the objective medical symptoms he noted or his course of treatment. A.R. at 21. As the ALJ noted, Dr. Liberman determined that plaintiff had a slow but normal gait and recommended a relatively conservative course of treatment, *see* A.R. at 961–62, 1140, 1143, 1146–47, 1150, 1152, but concluded that plaintiff had significant limitations in her range of motion and her ability to work, *see* A.R. at 960, 1152. After reviewing the record, the Court finds that there is substantial evidentiary and legal basis to support the ALJ's decision not to give controlling weight to Dr. Liberman's opinion as a treating physician.

*Fifth*, the ALJ properly weighed the other medical opinions in the record. Plaintiff first contends that the ALJ erred by not specifically addressing certain opinions by medical professionals from MedicsUSA. Pl.'s Mem. at 33–34. An unnamed medical professional

from MedicsUSA saw plaintiff on March 12, 2014 and concluded that she was in obvious discomfort, could not sit more than 5 minutes, and needed help to rise from her chair. A.R. at 946. Another medical professional, Peter Edwards, saw plaintiff on June 27, 2014, diagnosed her with myofascial strain, and advised that she lift no more than 25 pounds and avoid prolonged standing or walking. A.R. at 927–29. As defendant notes, however, none of these opinions provide any new or more detailed information. While the ALJ should review and consider all medical opinions in the record in making her determination, the ALJ is not required to engage in a point-by-point analysis of every finding of every physician in her determination. The ALJ must only "analyze[] all evidence and . . . sufficiently explain[] the weight [s]he has given to obviously probative exhibits." *Simms*, 877 F.2d at 1050. The ALJ sufficiently considered each medical opinion and addressed which ones she assigned more or less weight to in her determination.

Plaintiff next contends that the ALJ failed to consider her diagnoses of myofascial pain syndrome and other medical diagnoses. Pl.'s Mem. at 34–35. Though the ALJ did not expressly address the diagnosis of "myofascial pain syndrome," the ALJ acknowledged plaintiff's chronic back pain and the related symptoms. *See* A.R. at 19–21. The ALJ also considered plaintiff's x-rays showing mild ossification of the ligamentous insertions within the pelvis and trochanters, mild degenerative changes of the left hip, and mild hip joint narrowing. A.R. at 19. The ALJ further considered plaintiff's difficulty sleeping. A.R. at 19. More importantly, the ALJ "evaluate[d] the combined impact of th[e]se impairments on [plaintiff's] ability to function," as she was required to do. SSR 86-8, 1986 WL 68636,

at *2 (Jan. 1, 1986). The ALJ's consideration of plaintiff's medical diagnoses was more than sufficient.

Moreover, the ALJ devoted significant space in her determination to the question of whether claimant's back and hip pain were as severe and intense as plaintiff claimed. *See* A.R. at 19–20. Indeed, multiple physicians noted that the objective medical criteria did *not* support either the degree of plaintiff's pain or the degree to which the pain restricted plaintiff's range of motion and other functions. *See* A.R. at 771, 860, 924–25, 1039–41. The record indicates that the ALJ weighed the relevant indicia—plaintiff's underlying impairments, the medical evidence of pain, plaintiff's own assessments of her pain, and the physician's opinions—and independently concluded that plaintiff's claims of debilitating pain were not entirely credible. *See* A.R. at 19–20. Such credibility determinations are reserved for the ALJ who hears the testimony and evaluates the record firsthand. *Brown*, 794 F.2d at 706. The Court finds no reason to disturb the ALJ's finding.

Plaintiff then contends that the ALJ did not weigh opinions that plaintiff was "disabled" or "not disabled." Pl.'s Mem. at 36. An ALJ must "review all of the medical findings and other evidence that support a medical source's statement that [a claimant is] disabled." 20 C.F.R. § 404.1527(d)(1). However, the ALJ need not give any weight to a pure opinion that a claimant is disabled, as that is a finding reserved for the Commissioner. *See id.* The record contains many bare opinions from plaintiff's doctors that she is disabled from working, including many records that are simply work release forms cursorily signed by a doctor or nurse practitioner with no analysis. *See* A.R. at 819–27. The ALJ cited and

considered each of the opinions that plaintiff was disabled but reasonably did not afford any of them significant weight. A.R. at 21–22.

Plaintiff then asserts that the ALJ inaccurately characterized Dr. Liberman's opinions. Pl.'s Mem. at 36–37. At the outset, plaintiff contends that the ALJ treated one opinion as Dr. Liberman's *only* opinion, when Dr. Liberman gave several opinions. *Id.* at 36. That misstates the record. The ALJ analyzed the opinion as follows:

> I give no weight to *the opinion offered by Dr. Joseph Lieberman, M.D., in November 2017* that the claimant is "permanently disabled" by her conditions (Ex. 37F). While Dr. Lieberman is a treating source, this opinion is vague and does not offer any functional imitations. It is also inconsistent with his own examination findings at the time, which show that the claimant's gait was a little bit slow and only mildly unsteady, and that she had normal strength in her upper and lower extremities, intact reflexes, and no left hip tenderness. Furthermore, it is a pronouncement of disability, and that finding is reserved to the Commissioner.

A.R. at 21 (emphasis added). This analysis merely referred to one specific opinion of Dr. Liberman; the ALJ addressed other opinions by Dr. Liberman at other places in her analysis. *See* A.R. at 20. Additionally, contrary to plaintiff's assertion, the ALJ correctly assessed that Dr. Liberman's November 2017 opinion was vague. The report merely explained that Dr. Liberman saw no improvement in plaintiff's condition and that he thought she was "entirely disabled." A.R. at 1141. As discussed *supra*, the ALJ reasonably discounted Dr. Liberman's pronouncement of disability as a finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1).

Plaintiff next contends that the ALJ failed to assess whether certain opinions were supported by the clinical findings or explanations. Pl.'s Mem. at 37. Not so. Contrary to

plaintiff's assertion, the ALJ did "identify what the inconsistencies were." *Id.* For example, she explained that Dr. Williams' aggressive functional limitations on her ability to lift or carry weight and to sit, stand, or walk were inconsistent with his clinical findings of normal gait, intact sensation, full strength, and fairly normal range of motion. A.R. at 21.

Plaintiff then contends the ALJ gave Dr. Rothschild's opinion too much weight given that he was not a treating physician and that his examination occurred in 2017, well after plaintiff's injury. Pl.'s Mem. at 37. Plaintiff also contends that Dr. Rothschild's opinion conflicted with the ALJ's determination that plaintiff's back impairment caused more than minimal limitations. *Id.* at 38. True, but irrelevant. The ALJ's responsibility is to weigh all the various clinical findings, diagnoses, functional limitations, and opinions in the record and to make her own independent assessment of them. *Brown*, 794 F.2d at 706. The Court will neither reweigh the evidence nor substitute its judgment for the ALJ's.

Plaintiff faults the ALJ for noting that Dr. Rothschild's specialty was orthopedic surgery, but not noting that other physicians like Dr. Miknowski, Dr. Liberman, and Dr. Lavine also had specialties. Pl.'s Mem. at 39. Of course, the Commissioner generally may "give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). However, nothing *requires* the ALJ to give extra weight to the opinion of a specialist. The ALJ's decision of how to weigh the various medical opinions is entitled to significant deference and is not to be disturbed by this Court. *Cunningham*, 46 F. Supp. 3d at 36. The ALJ's consideration here was entirely appropriate.

*Sixth*, the ALJ sufficiently explained how plaintiff could perform light work.  An ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). Plaintiff contends the ALJ failed to articulate how each of plaintiff's medically determinable impairments affected her ability to perform the full range of light work.  Pl.'s Mem. at 39–41.  Plaintiff further contends that the ALJ erred by failing to explain her hypothetical question to vocational expert Quintin Boston regarding pulling and stooping. *Id.* at 42.  However, the ALJ sufficiently explained that plaintiff's residual functional capacity encompassed light work and articulated which objective medical evidence was the basis for her conclusion.  *See* A.R. at 18–22.  Furthermore, the ALJ explained which contrary evidence and opinions were not given much weight and why not, A.R. at 21–22, as she must do, *Brown*, 794 F.2d at 708.  As demonstrated, the ALJ's explanation suffices to allow this Court to review her conclusions of which functions plaintiff can perform. Nothing more is required.  *See Callaway v. Berryhill*, 292 F. Supp. 3d 289, 296 (D.D.C. 2018); *Grant v. Astrue*, 857 F. Supp. 2d 146, 154 (D.D.C. 2012).

*Seventh*, the ALJ reasonably concluded that plaintiff could perform her past relevant work as generally performed.  Plaintiff contends that because she can no longer perform her specific previous job, which required lifting children with special needs and their wheelchairs and other equipment, she satisfies step four and is therefore disabled. Pl.'s Mem. at 13–19.  Unfortunately for plaintiff, that is not the relevant legal standard.

The parties agree that, at plaintiff's previous job as a school bus attendant with D.C. Public Schools, she was required to perform heavy work like monitoring, disciplining, and even lifting children with special needs. *See* Pl.'s Mem. at 13; Def.'s Mem. at 18.  However, the relevant question is whether plaintiff can perform her past relevant work as "either as the claimant actually performed it or as it is generally performed." *Payne v. Barnhart*, 725 F. Supp. 2d 113, 117 (D.D.C. 2010).  The Social Security Act does not necessarily contemplate a claimant returning to her exact job, but rather returning to a similar job for which the claimant has the requisite skills or training. *See* SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982); *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  As the Commissioner correctly notes, Def.'s Mem. at 16–19, the claimant must be able to perform *either* "1. [t]he actual functional demands and job duties of a particular past relevant job; *or* 2. [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy," SSR 82-61, 1982 WL 31387, at *2. Therefore, if plaintiff could perform the functional demands and job duties of her "occupation as generally required," she is not disabled.

So the question becomes what exactly is plaintiff's "occupation."  The ALJ heard testimony from vocational expert Quintin Boston regarding the working conditions and physical demands of various jobs. *See* A.R. at 55–59, 60–62.  The ALJ relied on the vocational expert's testimony and ultimately concluded that plaintiff's past relevant work was as a "bus attendant" as defined by the Dictionary of Occupational Titles, which is listed as involving light work as generally performed. A.R. at 22.  The regulatory definitions of exertional levels are controlling.  SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

Plaintiff disagrees that the classification of "bus attendant" was the most appropriate.  Pl.'s Mem. at 15–17.  While the Court agrees that this classification does not *perfectly* describe plaintiff's past work, plaintiff fails to offer reliable documentation of another occupational title that exists in significant numbers in the national economy.  *See* SSR 00-4p, 2000 WL 1898704, at *2 ("Information about . . . occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.").  The burden remains on plaintiff at step four of the inquiry, *Stankiewicz*, 901 F.2d at 133, and plaintiff has failed to show she could not perform the occupation of "bus attendant" as generally performed.  Finding no superior alternative to the ALJ's classification of plaintiff's past work as "bus attendant," the Court concludes that the ALJ reasonably concluded plaintiff could perform her past relevant work.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Judgment of Reversal [Dkt. #13] is DENIED, and defendant's Motion for Judgment of Affirmance [Dkt. #16] is GRANTED.  An appropriate Order will issue with this Memorandum Opinion.


RICHARD J. LEON
United States District Judge